UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BETTY BURNETT, EXECUTRIX OF THE ESTATE OF HERMAN BURNETT, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 6:08-CV-322-REW |
| v. | ) ) | OPINION & ORDER |
| AIG LIFE INS. CO., | ) ) ) | |
| Defendant. | ) | |

*** *** *** ***

The Court ordered briefing concerning the substantive and procedural effects of the Employee Retirement Income Security Act of 1974 ("ERISA") on this case. *See* DE #8 (Minute Entry). Defendant AIG Life Insurance Company ("AIG"), issuer of the relevant policy, asserts that ERISA governs the Accidental Death and Dismemberment Policy ("Policy")[1], to include limiting discovery to the administrative record. *See* DE #9 (Response). Plaintiff Betty Burnett counters that the Policy should be exempt from ERISA. *See* DE #10 (Response Brief). AIG filed a Reply, *see* DE #11 (Reply), and the matter now stands submitted.

For the reasons described below, the Court finds that ERISA applies to the Policy. ERISA governs Plaintiff's benefits claim, preempting any state law theories related to the Policy. Further, the context limits discovery to the administrative record, and the case will proceed through party briefing and Court review of that record.

---

[1] Defendant proffered copies of the Annual Enrollment Guide (DE #11-3 and DE #11-4) and Summary Plan Description (DE #11-5) from 2004.

**I. Relevant Facts**

Plaintiff Burnett worked for non-party Sodexho and elected to obtain the Policy as an employment incident. *See* DE #9 at 3; DE #10 at 1. Sodexho made the AIG Policy, as well as policies from other companies, available for participating employees, plus their spouses and qualified dependents. *See* DE #9 at 2; DE #10 at 2. Burnett paid the full premiums to cover herself and her husband, Herman. *See* DE #9 at 3; DE #10 at 1.

On December 19, 2004, Herman Burnett tragically died from a gunshot wound. *See* DE #9 at 3; DE #10-2 (Affidavit of Plaintiff) at 1. Approximately January 6, 2005, Plaintiff submitted a claim for her husband's death under the Policy. *See* DE #9 at 3. AIG investigated the claim, and on March 3, 2008, AIG notified Burnett that the company would provide no benefits because the death appeared to be intentionally inflicted. *See* DE #9 at 3-4; DE #10-4 (Correspondence Exhibit) at 6.[2]

Dissatisfied with this result, Plaintiff sent an appeal letter to AIG on April 14, 2008. *See* DE #9 at 4; DE #10-4 at 2.[3] Defendant responded on August 19, 2008, to request additional documentation for the appeals process. *See* DE #10-4 at 8.

Burnett filed suit on September 3, 2008, to assert that AIG breached its contractual obligations under the Policy. *See* DE #1-3 (State Court Record) at 2. Just over a month later, on October 6, Defendant removed the suit to federal court, based on diversity and federal-question jurisdiction. *See* DE #1 (Notice of Removal).

---

[2] AIG originally sent a letter incorrectly dated February 3, 2008. *See* DE #10-4 at 3. By subsequent correspondence, AIG identified the error. *See id.* at 7.

[3] The letter may be dated incorrectly as April 14, 2007.

The parties consented to the jurisdiction of the undersigned for all proceedings in the matter. *See* DE #5-2 (Consent to Exercise of Jurisdiction by United States Magistrate Judge). At an initial telephonic conference, the Court learned that the parties dispute the applicability of ERISA, so the Court ordered briefing to resolve the crucial threshold question. *See* DE #8.

## II. Standard of Review

The parties essentially agree on the applicable standard of review and analysis for a threshold determination of ERISA applicability. *See* DE #9 at 6-8; DE #10 at 3. ERISA, when applicable, may preempt state law claims. *See* 29 U.S.C. § 1144(a). Whether ERISA applies to a particular plan generally "is a question of fact to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996). Answering this question of fact requires a progressive three-step analysis[4]:

> (1) The Court first applies the Department of Labor's "safe harbor" regulations, which exempt some plans from ERISA. *See id.*
>
> (2) If the plan is not exempt, the Court next determines whether an appropriate "plan" exists by asking if a reasonable person "could ascertain the intended benefits, the class beneficiaries, the source of financing, and procedures for receiving benefits" from the "surrounding circumstances." *See id.* at 434-35.
>
> (3) Third the Court assesses if the employer "established or maintained" the plan with the intent of providing benefits to its employees. *See id.* at 435 (citations omitted).

Plaintiff contends only that "It is the first part of this test that exempts the subject policy from ERISA." *See* DE #10 at 3. The "safe harbor" reg places certain programs involving funding via

---

[4] The employer must also establish a commerce nexus per 29 U.S.C. § 1003(a). *See Reber v. Provident Life & Acc. Ins. Co.*, 93 F. Supp. 2d 995, 1008 (S.D. Ind. 2000) (also citing 29 U.S.C. § 1002(12)). However, this nexus is not disputed here.

insurance policies outside of ERISA, thus creating a "harbor" against ERISA application. Four criteria must exist for the safe harbor to apply, relative to an insurance program:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1. All four criteria must exist for a plan to be exempt from ERISA. *See Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 388 (6th Cir. 2009).

Determining ERISA application may involve a fact question or, more directly in this scenario, a mixed question of law and fact. *See Thompson*, 95 F.3d at 437 (noting material question of fact as to safe harbor application and quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1135 n.3 (1st Cir. 1995): 'The question of endorsement *vel non* is a mixed question of fact and law. In some cases the evidence will point unerringly in one direction . . . In other cases, the legal significance of the facts is less certain."). Here, both sides have received a full chance to brief and argue their respective positions with respect to ERISA application, and neither side has sought an evidentiary hearing.

### III. Analysis

Plaintiff's phrasing indicates waiver of, or concession to, the second and third steps of the

4

three-step analysis under *Thompson*.[5] *See* DE #10 at 3; *Thompson*, 95 F.3d at 434-35. That is, since Plaintiff argues "It is the first part . . ." that creates the exemption, *see* DE #10 at 3, the natural and obvious inference is that the second and third parts do not create such exemption. Accordingly, the Court's analysis focuses solely on the first step of the analysis: whether the Department of Labor's "safe harbor" regulations make the instant Policy exempt from ERISA.

Of the four criteria outlined in the regulations, the parties dispute only two. Specifically, the parties agree that participation in the Policy was voluntary and that Sodexho received no compensation in connection with the Policy. *See* DE #10 at 2; DE #11 at 2. For this reason, the parties dispute only whether Sodexho (a) contributed to the plan and (b) endorsed the plan. As noted previously, all four criteria must be met for a plan to be exempt from ERISA.

For the reasons articulated below, the Court finds that Sodexho endorsed the Policy, but the Court cannot reach a conclusion as to contribution. However, the endorsement finding eliminates application of the safe harbor, leading to ERISA governance in this case.

Contribution by Employer

This criterion concerns whether Sodexho, as Plaintiff's employer, contributed to the

---

[5] Even if Plaintiff's silence is not concession, Defendant's brief establishes the second and third steps of the *Thompson* analysis. *See Thompson*, 95 F.3d at 434-35. That is, Defendant (without opposition from Plaintiff) satisfies the Court that (a) Sodexho's Policy constitutes a plan under ERISA and (b) Sodexho established and maintained the Policy with the intent of providing benefits to its employees. That is, "from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits" from the materials and training provided by Sodexho. *See id.* at 435 (quoting *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991). Moreover, as to establishment of the Policy, the Court finds that Sodexho "had a purpose to provide health insurance, accident insurance, or other specified types of benefits to its employees." *See Hansen v. Continental Ins. Co.*, 940 F.2d 971, 978 (5th Cir. 1991) (citing 29 U.S.C. § 1002(1)). Sodexho played an active role in determining the coverage and eligibility requirements.

Policy. *See* 29 C.F.R. § 2510.3-1(1). Defendant conclusorily asserts that the Policy is one component of a larger Sodexho benefits package, to which Sodexho contributed. *See* DE #9 at 8. In opposition, Plaintiff contends that, because she paid the entire policy premiums, Sodexho made no contribution. *See* DE #10 at 2, 4.

Plaintiff's payment of all premiums builds part of the necessary record for a first-criterion analysis. The Sixth Circuit recently addressed an effectively similar scenario in *Helfman*, 573 F.3d at 389-91, where the court considered the employer contribution criterion in light of an employee's purported reimbursement of premiums to his employer. *See id.* In looking at whether the employee's reimbursement permitted the criterion to apply, the Sixth Circuit expressed concern that the same plan could be challenged under state law, if the "safe harbor" regulations applied and exempted the plan in the case of Helfman, and federal law as to other employees who did not reimburse. *See id.* at 390. The court's first-criterion analysis suggests, without directly stating, that an employee who pays all the premiums may satisfy the criterion if the workplace standard practice is for employees to do so and if the employer does not otherwise contribute. In such a workplace, the Sixth Circuit's concern about multiple governance structures for the same plan would not resonate. In earlier cases as well, the Circuit Court focused first-criterion analysis on who paid the premiums absent any contention that the employer otherwise contributed to an overall plan. *See, e.g.*, *Arbor Health Care Co. v. Sutphen Corp.*, 181 F.3d 99, *4 (6th Cir. 1999) (table) ("In the instant case, Sutphen paid 80% of the policy premiums on behalf of its covered employees and their dependents. The safe harbor inquiry is therefore at an end . . ."). Here, AIG openly stipulates that Plaintiff paid all premiums. *See* DE #9 at 8. However, Defendant contends that Sodexho contributed in broader ways that impact the Court's analysis. *See id.*

6

Ultimately, the record provides insufficient information to determine whether Sodexho contributed to an overall benefits program for employees in a manner that would be dispositive for this criterion of the "safe harbor" regulations. Under a first-criterion analysis, where an employer contributes to an overall benefits program for employees, courts must look beyond who paid the premiums for an individual component of the overall program. *See Fitzgerald v. Cont'l Assurance Co.*, No. 5:07-413-JMH, 2008 WL 5427635, at *4 (E.D. Ky. Dec. 30, 2008) (quoting *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000)). Defendant's two-paragraph analysis on the first criterion contends that Sodexho contributed to a broader benefits program for employees. *See* DE #9 at 8. However, AIG pointed to no evidence in the record to make its case. To find for Defendant here, the Court would need some proof of Sodexho's contribution marshaled here; the Court cannot find contribution based solely on argument or on implied reference to proof presented for other criteria. On the other hand, but equally as brief, Plaintiff provides a one-sentence analysis: "AIG has offered no proof that Sodexho contributed to the 'bundle' of benefits."[6] *See* DE #10 at 4. The Court would be unable to conclude the first criterion analysis on this record, as a matter of law.

Endorsement by Employer

However, the second criterion in dispute definitively forecloses the "safe harbor"

---

[6] The 2009 Benefits-at-a-Glance information Plaintiff submitted to dispute a different criterion would actually, if relevant, support Defendant's position about an overall benefits program. *See* DE #10-3 (Benefits-at-a-Glance) at 1 ("When you review what we have to offer, you will see a comprehensive package that covers everything from traditional benefits to unique offerings."). The relevance of the documents is debatable. As AIG argues, the 2009 records post-date the policy at issue. However, Plaintiff avers that the coverage descriptions were the same as in 2004. *See* DE #10-2 (Affidavit of Plaintiff) at ¶ 10.

exemption. This criterion addresses whether Sodexho endorsed the Policy. *See* 29 C.F.R. 2510.3-1(3). The particular provision maintains safe harbor status if "[t]he sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer." *See id.* If the employer "endorsed" the plan, the safe harbor would not apply and ERISA would govern evaluation of the policy at issue.

      Defendant articulates five reasons in support of its argument that Sodexho endorsed:

      (1) "Sodexho had 'sole and absolute discretion' to determine employee eligibility for the Policy and negotiated the terms of the Policy." DE #9 at 12.

      (2) "Sodexho was the Plan Administrator." *Id.* at 13.

      (3) "The Policy refers to ERISA." *Id.* at 13.

      (4) "Sodexho provided materials endorsing the Policy." *Id.* at 14.

      (5) "Sodexho actively participated in processing participant claims." *Id.*

In support, Defendant submitted, in part, the 2004 SPD[7] for the Sodexho Accidental Death and Dismemberment Plan, the 2004 Annual Enrollment Guide, and an affidavit from the AIG Manager of the Sodexho Plan. Plaintiff responded in opposition, mirroring the five-reason structure:

      (1) "Several policies were offered to Sodexho employees." DE #10 at 4.

      (2) "AIG was the Plan Administrator." *Id.* at 5.

---

[7] SPD is an acronym for Summary Plan Description.

  (3) "AIG handled claims." *Id.*

  (4) "[Sodexho's] name or logo on the SPD is not sufficient to indicate endorsement." *Id.*

  (5) "Calling the plan an ERISA plan in the SPD is not sufficient." *Id.* at 6.

Plaintiff submitted the 2009 Sodexho Benefits-at-a-Glance, an affidavit from herself, and various correspondence with AIG. The Court finds, as a matter of law, that Sodexho endorsed the Policy.

  The instant record convincingly establishes endorsement. In assessing the parties' arguments, the Court must focus on the proper substantive prism: "whether employees could reasonably conclude that the employer had endorsed the policy based on their observation of the employer's activities in connection with the plan." *See Thompson*, 95 F.3d at 436 (approvingly discussing *Johnson*, 63 F.3d at 1134 & 1137 n.6).

  The Sixth Circuit standard outlines factors that courts should consider: (1) the extent of employer involvement in determining employee eligibility; (2) the degree of employer involvement in negotiating the policy or benefits; (3) whether the employer is the plan administrator; and (4) whether the SPD refers to ERISA and indicates the plan will be governed by ERISA. *See Thompson*, 95 F.3d at 436-37. As the Circuit Court summarized, "when an employer determines which employees will be eligible for coverage, negotiates the terms or benefits of the policy, is named as the plan administrator, and provides a summary plan description describing the plan as an ERISA plan, the plan is governed by ERISA." *Nicholas v. Standard Ins. Co.*, 48 F. App'x 557, 564 (6th Cir. 2002). Defendant authoritatively establishes each of these factors, placing the instant case squarely under *Thompson* (and *Nicholas*).

  Each factor turns here on substantial and uncontradicted evidence. First Sodexho determined who would be covered under the Policy. *See* DE #11-2 (Affidavit of Lukens) at ¶¶

12, 14. Second, Sodexho negotiated the terms and benefits of the Policy. *See id.* at ¶¶ 12-13, 15, 23. Next, Sodexho is, at least titularly, the plan administrator. *See id.* at ¶¶ 12, 20-22, 25. Finally, Sodexho provided an SPD that describes the plan as an ERISA plan. *See id.* at ¶¶ 15-18. Notably, the 2004 SPD actually provides an entire section titled "Your ERISA Rights." *See* DE #11-5 (SPD) at 25-26.

The Court also notes that the SPD expressly describes the policy as "the AD&D or the plan **sponsored by** Sodexho." *See id.* at 2 (emphasis added). Such language is the essence of endorsement. Further, per the terms of the SPD:

-- Sodexho retained to itself the right to cancel coverage for a related "fraudulent act." *See* SPD, at 12.

-- Sodexho was the intake point for claims and appeals. *See id.* at 20.

-- Sodexho retained the power to "terminate the plan and to amend or modify the provisions of the plan at any time." *See id.* at 26.

Simply put, and based on all of the listed "activities" of Sodexho, the only reasonable conclusion by a worker would be that Sodexho itself endorsed the plan. Undoubtedly, Sodexho's "functions" relative to the policy well-exceeded those envisioned by the safe harbor and were not solely related to policy publicity or premium administration. The employer did far more than neutrally facilitate access between insurance company and employee. On the record submitted, the Court can only conclude that Sodexho endorsed the Policy.[8]

---

[8] The Court disregards the Form 5500 reference. Nothing suggests that Sodexho employees would have known about that involvement. *See Ackerman v. Fortis Benefits Ins. Co.* 254 F. Supp. 2d 792, 811 (S.D. Ohio 2003) ("Equally so, it matters not whether US Air filed the IRS Form 5500s submitted to it by Fortis. . . . ; such relates to its intent, not to how its

Plaintiff makes valid points regarding the Sodexho role, but several of those points (*e.g.*, administrator identity; degree of Sodexho imprimatur) simply are not accurate relative to the 2004 SPD. Further, while AIG obviously has an important role *vis-a-vis* policy-term application, that does not mean that Sodexho's plan role was neutral, for safe harbor purposes. Plainly, Sodexho's role – formatively, administratively, and publicly – was extensive and supports only one rational conclusion on this record.

The evidence "unerringly points" to Sodexho having endorsed. As such, the Court finds that the Department of Labor's "safe harbor" regulations do not exempt the Policy, and ERISA applies to this action.

## IV. Conclusion

For the reasons stated, the Court finds that ERISA applies. Accordingly, the Court **ORDERS** as follows:

(1) Discovery is limited to the administrative record and any additional information submitted during the administrative appeals process. *See Huffaker v. Metro. Life Ins. Co.*, 271 F. App'x 493, 503 (6th Cir. 2008) ("In an ERISA claim for benefits action, the district court's review is generally 'based solely on the administrative record'.") (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)). No evident exception applies here. *See Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348-51 (2008) (describing conflict-of-interest exception); *Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009) (describing procedural challenge exception).

---

participation with the plan was perceived by its employees."). Further, the negotiation issue is of dubious value concerning employee perception for the same reason.

(2) Further proceedings in this case shall thus be limited to briefing and review of the administrative record. *See Wilkins*, 150 F.3d at 619 (providing Sixth Circuit precedent concerning merits proceedings in ERISA cases). **On or before January 29, 2010**, the Defendant shall file, under seal, the administrative record that was before the plan administrator, including any relevant plan documents.

(3) The following motion deadlines shall be observed in this action:

A.    All motions to amend pleadings or to add additional parties shall be filed by **February 15, 2010**.

B.    On or before **March 1, 2010**, the Plaintiff shall file its Motion for Judgment Overturning the Administrative Decision, together with a supporting memorandum.

C.    No later than **thirty (30) days** following the filing of the Plaintiff's motion and supporting memorandum, the Defendant shall file its response.

D.    The Plaintiff shall have a period of **fifteen (15) days** thereafter to file a reply.

(4) Briefing shall include attention to the appropriate standard of review. The parties shall address whether the Plan Administrator or, instead, AIG retained discretion to interpret and apply the policy and what effect such retention (by either entity) would have on the standard of review.

(5) The parties have not requested oral argument. However, the parties may request same by filing an appropriate motion with this Court prior to the expiration of the briefing schedule set forth above.

This the 14th day of January, 2010.

Signed By:

*Robert E. Wier*  *REW*

**United States Magistrate Judge**